UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Paigelin Annette Tupman, | ) | Civil Action No.: 4:22-cv-02745-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for SSI on October 17, 2019, with an alleged onset date of October 17, 2018. (Tr. 29). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in December 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on March 18, 2022, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 29-43). Plaintiff submitted additional evidence to the Appeals Council. (Tr. 13-25). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on June 21, 2022,

making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court in August 2022 (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in July 1990 and was twenty-nine years old when the application was filed. (Tr. 42). Plaintiff had past relevant work of warehouse worker. (Tr. 42). Plaintiff alleges disability originally due to epilepsy, nerve related seizures, bipolar, and anxiety panic attacks. (Tr. 87-88). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of June 21, 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 29-43):

1. The claimant has not engaged in substantial gainful activity since October 17, 2019, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: depression, anxiety, posttraumatic stress disorder (PTSD), panic disorder, bipolar disorder; seizure disorder; headache disorder; bilateral sciatica; and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except this individual is able to lift and carry 50 pounds occasionally and 25 pounds frequently. She is able to sit for six hours and stand and/or walk for six hours out of an eight-hour workday. She is able to frequently operate foot controls. The claimant can climb ramps and stairs frequently but never climb ladders, ropes, or scaffolds. She can never balance as described in the Selected Characteristics (SCO). She is able to frequently stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights, never work near dangerous moving mechanical parts,

and never work never near comparable workplace hazards. She cannot operate a motor vehicle as a work requirement. She is able to tolerate frequent dust, odors, fumes and pulmonary irritants. She is able to tolerate occasional extreme heat and can work in loud noise. She is able to tolerate moderate or less intense lighting, meaning lighting comparable or less intense than comparable office or retail environment. The claimant is limited to a low stress work environment, including the following factors: Simple unskilled tasks, detailed but not involved instructions, simple work-related decisions; frequent interactions with the general public, but these interactions should be mostly brief and superficial and not ongoing in nature; few changes to work setting in terms of core work duties and processes, no strict production quota work. The claimant is able to maintain concentration, persistence, and pace for two hours at a time, but would be off-task three percent of the eight-hour workday in addition to regularly afforded breaks and would be absent one day every three months.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 3, 1990 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 17, 2019, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues generally that the ALJ failed to explain how the RFC determination was reached, specifically as to the 3% off task and one work day every three months. Plaintiff argues limitations from seizures(and resulting falls and periods post-seizure) and migraines were not

accounted for in the RFC. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.     LEGAL FRAMEWORK**

**1.     The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

---

claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

B.     **ANALYSIS**

**RFC**

Plaintiff argues generally that the ALJ failed to explain how the RFC determination was reached, specifically as to the 3% off task and one work day every three months. Plaintiff argues limitations from seizures(and resulting falls and periods post-seizure) and migraines were not accounted for in the RFC.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

After finding severe impairments of depression, anxiety, PTSD, panic disorder, bipolar disorder, seizure disorder, headache disorder, bilateral sciatica, and obesity and finding Plaintiff did

7

not meet a Listing, but had moderate limitations in all paragraph B criteria, the ALJ found an extensive RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except this individual is able to lift and carry 50 pounds occasionally and 25 pounds frequently. She is able to sit for six hours and stand and/or walk for six hours out of an eight-hour workday. She is able to frequently operate foot controls. The claimant can climb ramps and stairs frequently but never climb ladders, ropes, or scaffolds. She can never balance as described in the Selected Characteristics (SCO). She is able to frequently stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights, never work near dangerous moving mechanical parts, and never work never near comparable workplace hazards. She cannot operate a motor vehicle as a work requirement. She is able to tolerate frequent dust, odors, fumes and pulmonary irritants. She is able to tolerate occasional extreme heat and can work in loud noise. She is able to tolerate moderate or less intense lighting, meaning lighting comparable or less intense than comparable office or retail environment. The claimant is limited to a low stress work environment, including the following factors: Simple unskilled tasks, detailed but not involved instructions, simple work-related decisions; frequent interactions with the general public, but these interactions should be mostly brief and superficial and not ongoing in nature; few changes to work setting in terms of core work duties and processes, no strict production quota work. The claimant is able to maintain concentration, persistence, and pace for two hours at a time, but <u>would be off-task three percent of the eight-hour workday in addition to regularly afforded breaks and would be absent one day every three months</u>.

(Tr. 35)(emphasis added). After the three percent off task finding, there is no mention of "off task" or "percent/percentage" in the RFC narrative, much less explanation. In the conclusion, the ALJ only states: "the undersigned included substantial seizure precautions and environmental limitations... her mental limitations were accommodated with low stress, simple work and limited interaction with the public... the undersigned considered the effects o[n] her concentration by limiting her work duties, production standards, and changes in the work setting." (Tr. 41-42). There is no conclusion language or discussion about the absences or the off task percentage/breaks.[3]

---

[3] For informative purposes, the state agency consultants' opinions did not discuss an off task percentage or a specific number of absences. (Tr. 101, 129, 135-138).

There is a plethora of case law on off task percentages and what is required to support an ALJ's finding of an off task percentage. All RFC determinations are required to be supported by explanation from the evidence to the conclusion. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p). This requires that the ALJ "both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)(*quoting Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). Where an ALJ renders a specific off task percentage conclusion, such as 3%, the "ALJ must explain and support that conclusion with substantial evidence;" "[m]any courts in the Fourth Circuit... require the ALJ to explain how he or she arrived at the off-task percentage." *Berry v. Comm'r*, 2022 WL 3354778, at *2 (W.D.N.C. Aug. 12, 2022)(collecting cases extensively)(finding that where the ALJ never discussed the percentage anywhere else other than the conclusory determination and the Commissioner generally argued the RFC was based on record evidence but did not argue how the ALJ explained arrival at the percentage, it was impossible for the court to determine whether the RFC was supported by substantial evidence). "In the absence of explanation, the Court is left to pontificate on where the ALJ came up with the nine-percent figure and why this limitation adequately accounts for Plaintiff's limitations. This is the exact type of guesswork that *Mascio* and its progeny prohibit this Court from doing." *Kennedy v. Berryhill*, 2019 WL 3664936, at *4 (W.D.N.C. Aug. 6, 2019); *Bibey v. Saul*, 2020 WL 7694552, at *4 (D. Md. Dec. 28, 2020)("the decision is immutably flawed in describing how the ALJ arrived the five percent limitation based on the evidence presented. Where, as here, the off task calculation has the potential

to be work preclusive"); *Keith L. v. Saul*, 2021 WL 1723084, at *2 (D. Md. Apr. 30, 2021)("Without a narrative explanation of how the evidence supports the ALJ's seemingly arbitrary conclusion that plaintiff would be off-task five percent of the workday, the Court cannot engage in meaningful substantial evidence review."); *Beth Ann O. v. Kijakazi*, 2022 WL 3360277, at *3 (D. Md. Aug. 15, 2022)(rejecting Commissioner's reliance on that there is no requirement to articulate a percentage and noting that Fourth Circuit has regularly held a failure to explain how arrived at the specific percentage found precludes meaningful review). Further, while a specific percentage limitation may be helpful in accounting for a moderate limitation previously found in CPP, it is error to fail to explain the source of finding a specific percentage and remand was necessary for an explanation that allowed for meaningful judicial review. *Oliver v. Saul*, No. 5:19-cv-02974-RMG-KDW, 2021 WL 431735, at *16 (D.S.C. Jan. 26, 2021), *report and recommendation adopted*, 2021 WL 428849 (D.S.C. Feb. 8, 2021); *Roof v. Saul,* No. 5:19-cv-1571-MGL-KDW, 2020 WL 3549206, at *10 (D.S.C. June 23, 2020), *report and recommendation adopted*, 2020 WL 3548814 (D.S.C. June 30, 2020). In a case where the ALJ explained acceptance of one particular percentage and rejection of a higher percentage from the record evidence, the court was able to review such finding. *Brailsford v. Saul*, No. CV 1:20-45-TLW-SVH, 2020 WL 8455073, at *18 (D.S.C. Aug. 27, 2020), *report and recommendation adopted*,  2021 WL 165087 (D.S.C. Jan. 19, 2021). In the particular facts of the instant case, the ALJ provided no explanation for the percentage limitation at issue that was found and the decision precludes meaningful judicial review. The court cannot engage in meaningful review where the ALJ only provides a conclusion of three percent off task.  Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

Proper explanation of this issue may have a significant impact on the Commissioner's determination at other Steps. Upon remand, the ALJ should take into consideration Plaintiff's briefed allegations of error, and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

April 14, 2023
Florence, South Carolina

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge